IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
| Plaintiff, | | |
| v. | | No. 06-00175-02-CR-W-BCW |
| RAMAR D. BROWN, | | |
| Defendant. | | |

**GOVERNMENT'S RESPONSE
IN OPPOSITION TO DEFENDANT'S *PRO SE* MOTION FOR
COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)**

The United States of America, through Teresa Moore, Acting United States Attorney for the Western District of Missouri, and the undersigned attorney, provides the following response in opposition to defendant's *pro se* motion for compassionate release. The defendant seeks to have his sentence modified and asks this Court to "immediately release him to home confinement" and supervised release based upon extraordinary and compelling reasons. (D.E. 126.) The defendant argues extraordinary and compelling reasons exist because the coronavirus (COVID-19) places him at risk if the defendant remains in the custody of the Bureau of Prisons (BOP). The factors set forth in 18 U.S.C. § 3553(a) do not support a modification or reduction of the defendant's sentence. The Government opposes this request because the defendant remains a danger to the community due to his role in the commission of over 20 armed robberies and carjackings, and asks the Court to deny the defendant's motion.

## I. Procedural History

For three months in the fall of 2005, Brown and co-defendant Morris L. Mitchell conducted a series of carjackings and robberies of various businesses in Kansas City, Missouri. On May 9, 2006, a 40-count indictment was returned charging both prior felons with numerous violations of federal law. (D.E. 1.)

On January 4, 2007, Brown pleaded guilty pursuant to a plea agreement with the Government. (D.E. 35, 37.) Brown pleaded guilty to one count of conspiracy, in violation of 18 U.S.C. 371; 19 counts of Hobbs Act robbery and aiding and abetting Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951 and 2; one count of aiding and abetting carjacking, in violation of 18 U.S.C. §§ 2119 and 2; one count of aiding and abetting brandishing a firearm during a crime of violence, the carjacking, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and 2; and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

On July 23, 2007, the district court sentenced Brown to an aggregate 300 months' imprisonment. (D.E. 47-48.) Based on the information made available on the Bureau of Prisons Inmate Locator, the defendant's release date is June 21, 2028. (*See* https://www.bop.gov/inmateloc/.)

On April 5, 2021, the defendant filed a motion for compassionate release and asserts that the current situation regarding the coronavirus (COVID-19) places the defendant at risk if he remains in custody. (D.E. 126.)

## II. First Step Act

The First Step Act, effective December 21, 2018, provides inmates the ability to file a motion for compassionate release, an ability previously only vested in the BOP. The statute, 18 U.S.C. § 3582(c)(1)(A), originally permitted judicial relief only upon a motion by the Director

2

of the BOP. Section 603(b) of the First Step Act now permits courts to act "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."

Under 18 U.S.C. § 3582(c) a court may not modify a term of imprisonment once it has been imposed except that, under subsection § 3582(c)(1)(A), a court may reduce a term of imprisonment upon finding "extraordinary and compelling reasons," if such reduction is consistent with applicable policy statements of the Sentencing Commission, after considering the factors set forth in 18 U.S.C. § 3553(a), and after determining the defendant is not a danger to the community as provided in 18 U.S.C. § 3142(g). (U.S.S.G. § 1B1.13(2).) The pertinent policy statement, U.S.S.G. § 1B1.13, defines specific medical, age, and family circumstances as possibly justifying a sentencing reduction under this statute, and further authorizes a sentencing reduction based on an extraordinary and compelling circumstance identified by the BOP. (§ 1B1.13 Commentary n.1(D).)

The Government acknowledges that Courts are divided on the applicability of U.S.S.G. § 1B1.13 when a motion for compassionate release is brought directly by an inmate under the First Step Act, rather than a motion by the Director of the BOP. This division is, at least in part, because the text of § 1B1.13 is tailored to motions specifically brought by the BOP, and the Guideline has not been updated or revised since 18 U.S.C. § 3582(c) was amended to allow inmates to bring motions on their own behalf. Compare *United States v. Warren*, 456 F.Supp.3d 1083, 1084-86 (D. Minn. Jan. 1, 2020), with *United States v. Jones*, 2020 WL 6817488, at *6-9 (6th Cir. Nov. 20, 2020) ("We now join the majority of district courts and the Second Circuit in holding that the

passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release.") (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020). *See also United States v. Gunn*, 2020 WL 6813995, at *1-2 (7th Cir. Nov. 20, 2020).

The Eighth Circuit has not yet decided this issue. *See United States v. Rodd*, 966 F.3d 740, 747 (8th Cir. 2020) ("We need not determine whether the district court erred in adhering to the policy statements in § 1B1.13."). However, while it remains undecided within the Eighth Circuit whether § 1B1.13 applies to motions for compassionate release brought directly by an inmate, and therefore whether Courts consider whether the defendant remains a danger to the community, § 3582 still requires the Court to consider the § 3553(a) factors, one of which is "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). Further, the Government submits even if not found to be applicable, § 1B1.13 is at the very least instructive on the pertinent issues of a motion for compassionate release. *See United States v. Pelichet*, 2020 WL 6825699, at *5 (D.S.D. Nov. 20, 2020) ("With the understanding that it is not limited by Guideline § 1B1.13, the Court will look to the Sentencing Commission's commentary notes for guidance." (*citing Rodd*, 966 F.3d at 745 (noting that the district court first analyzed the prisoner's motion under the commentary to § 1B1.13 to determine whether he satisfied the "extraordinary and compelling" reasons for compassionate release)); *United States v. Gashe,* 2020 WL 6276140 at *3 (N. D. Iowa Oct. 26, 2020) ("I agree with those courts that have found that although [§ 1B1.13] provides helpful guidance on what constitutes extraordinary and compelling reasons, it is not conclusive given the FSA's changes.").

As the proponent of a motion, the inmate bears the burden of proving both that they have satisfied the procedural prerequisites for judicial review—*i.e.*, that they have "exhausted all

administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf" or that 30 days have lapsed "from the receipt of such a request by the warden"—and that "extraordinary and compelling reasons" exist to support the motion. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."); *cf. United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) ("[A] defendant, as the § 3582(c)(2) movant, bears the burden of establishing that a retroactive amendment has actually lowered his guidelines range in his case.").

### III. BOP Response to the Coronavirus Pandemic

The BOP has taken significant measures to protect the health of all inmates. The BOP began planning for potential coronavirus transmissions in January 2020. At that time, the agency established a working group to develop policies in consultation with subject matter experts at the Centers for Disease Control (CDC), and in accordance with guidance from the World Health Organization (WHO). The BOP has implemented preventive and mitigation measures including:

- **Modified Operations:** The BOP has implemented modified operations to maximize social distancing in all facilities. Inmates are limited in their movements to prevent congregate gathering. Essential inmate work details, such as Food Service, continue to operate with appropriate screening.

- **Screening of Inmates and Staff:** All newly-arriving BOP inmates are screened by medical staff for COVID-19. The screening includes a symptom screen, a temperature check, and an approved viral PCR test. Inmates who arrive symptomatic and/or test positive are placed in medical isolation. Inmates who arrive asymptomatic and test negative are placed in quarantine for at least 14 days, and are tested before entering general population. Enhanced health screening of staff, contractors, and other visitors is performed at all BOP locations.

- **Social Visits:** Until recently all social visits were suspended. In accordance with specific guidance designed to mitigate risks, the BOP is now reinstating social visits, where possible to maintain the safety of all staff, inmates, and visitors. All visits are non-contact and social distancing between inmates and visitors is enforced. Visitors are symptom

screened and temperature checked, and inmates and visitors must wear appropriate face coverings, in addition to taking other hygiene precautions. Tours continue to be suspended.

- **Legal Visits:** Telephone calls and/or video conferencing with outside counsel is accommodated to the extent possible. In-person legal visits are accommodated upon request, based on local resources, and face coverings are required.

In addition, the BOP has begun administering vaccines to inmates and staff and is committed to doing so as quickly as possible. To date, over 146,971 doses have been administered. Further details regarding the BOP's COVID-19 action plan and efforts, and a daily updated resource page are available at: https://www.bop.gov/coronavirus/index.jsp.[1]

Taken together, these measures are designed to mitigate the risks of COVID-19 transmission in BOP institutions. BOP professionals continue to monitor this situation and adjust practices as necessary to maintain the safety of prison staff and inmates while also fulfilling its mandate of incarcerating all persons sentenced or detained based on judicial orders.

Unfortunately, inmates have become ill, and there have been COVID-19 outbreaks at several institutions. Notwithstanding the current pandemic crisis, the BOP must carry out its charge to incarcerate sentenced criminals to protect the public. It must consider the effect of a mass release on the safety and health of both the inmate population and the citizenry. It must marshal its resources to care for inmates in the most efficient and beneficial manner possible. It must assess release plans, which are essential to ensure that a defendant has a safe place to live and access to health care in these difficult times. And it must consider a myriad of other factors, including the availability of transportation for inmates, and of supervision of inmates once released.

---

[1] According to the resource page, due to the rapidly evolving nature of this public health crisis, the BOP will update the dashboard daily at 3:00 p.m. based on the most recently available data from across the agency as reported by the BOP's Office of Occupational Health and Safety.

6

Case 4:06-cr-00175-BCW   Document 127   Filed 04/29/21   Page 6 of 13

In addition, the Attorney General has directed that the BOP prioritize transferring inmates to home confinement in appropriate circumstances when those inmates are vulnerable to COVID-19 based on CDC risk factors, and the BOP is devoting all available resources to executing that directive. On March 26, 2020, the Attorney General directed the Director of the BOP, upon considering the totality of the circumstances concerning *every* inmate, to prioritize the use of statutory authority to place prisoners in home confinement. Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), enacted on March 27, 2020, permits the BOP, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau of Prisons,[2] to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate." Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (to be codified at 18 U.S.C. § 3621 note.) To date, the BOP has placed more than 24,668 inmates on home confinement. *See* https://www.bop.gov/coronavirus/.

Even though the Government is requesting the Court dismiss the defendant's motion, the Government is sensitive to the issues the defendant raises related to the coronavirus pandemic. The Government does not minimize the concern or the risk to inmates such as the defendant. At the present time, the BOP has taken action to mitigate the danger for all inmates. In this case, although the Government concedes that the defendant has identified CDC medical risk factors affecting the likelihood of severe outcomes from COVID-19, after considering the applicable § 3553(a) factors,

---

[2] On April 3, 2020, the Attorney General gave the Director of the BOP the authority to exercise this discretion.

and determining that the defendant remains a danger to the community, as will be explained below, and the Government objects to his release from custody.

### IV. Defendant Remains a Danger to the Community and Section 3553(a) Factors Do Not Support Release

This Court may not modify or reduce the defendant's sentence without considering the 18 U.S.C. § 3553(a) factors, including the nature and circumstances of the offense and history and characteristics of the defendant; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from future crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.[3] 18 U.S.C. § 3582(c); *see also United States v. Jones*, 2020 WL 6817488, at *11 (6th Cir. Nov. 20, 2020) (citing *Gall v. United States*, 552 U.S. 38 (2007) ("District courts should consider all relevant § 3553(a) factors before rendering a compassionate release decision."). Consideration of these factors, which are not effected by COVID-19, does not allow the Court to grant the defendant's motion for compassionate release.

After considering the factors set forth in § 3553(a), and the relevant policy statement, a reduction in the defendant's sentence is not warranted and the defendant's motion should be denied. The § 3553(a) Factors Include:

---

[3] U.S.S.G. § 1B1.13(2), states that even if a prisoner demonstrates "extraordinary and compelling reasons," he is not entitled to compassionate release if he poses "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." As discussed above, Courts are divided as to whether § 1B1.13 applies outside the context of a motion filed by the BOP. However, § 3582 unquestionably requires the Court to consider the § 3553(a) factors, which encompasses the arguments the Government has raised with regard to the defendant's presentation of a danger to the community and the need to protect the public.

8

(1) nature and circumstances of the offense and the history and characteristics of the defendant. § 3553(a)(1).

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; *to protect the public from further crimes of the defendant*; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. § 3553(a)(2)(A)-(D) (emphasis added).

In his underlying conviction, this defendant came before the Court already having multiple prior felony convictions, including a prior robbery conviction. He pleaded guilty to twenty-three violent felonies, including carjacking, brandishing a firearm during the carjacking, Hobbs Act robberies, and being a felon-in-possession of a firearm. As outlined in the factual basis admitted by the defendant in the plea agreement, this defendant participated in a violent crime spree which lasted three months and impacted many individual victims and also many Kansas City businesses. (D.E. 37.) All of the offenses involved the use or threatened use of firearms. This violent crime spree was a compelling factor in the sentence he is now serving. None of those facts have changed, and they weigh heavily on the Government's analysis of § 3553 factors here as they did at his sentencing.

U.S.S.G. § 1B1.13 directs Courts to also consider the factors outlined in 18 U.S.C. § 3142(g) in order to determine whether the defendant remains a danger to the community. Under 18 U.S.C. § 3142(g), the Court must consider four factors in determining whether the defendant might present a danger: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct,

9

history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g)(1)–(4). Consideration of these factors—which are not affected by COVID-19—does not allow this Court to conclude that this defendant is not a danger to the safety of any other person or the community.

Nothing about the COVID-19 pandemic reduces the defendant's danger to others nor minimizes other § 3553(a) factors.

The defendant has failed to demonstrate that the 18 U.S.C. § 3553(a) factors the Court considered at the time of sentencing have changed, nor that the defendant is no longer a danger to the community, therefore the Court should deny the defendant's motion for release.

### V. **The Court Has No Authority to Place the Defendant on Home Confinement**

The defendant asks the Court to resentence him to home confinement for the remainder of his custodial sentence. (D.E. 126.) The Court should decline the request because read in conjunction, 18 U.S.C. §§ 3621(b) and 3624(c) impose upon the BOP a qualified obligation to facilitate a prisoners' transition from incarceration in a prison facility to a halfway house. (*See Elwood v. Jeter*, 386 F.3d 842, 844, 847 (8th Cir. 2004).) "There is no question that § 3621(b) provides the BOP with broad discretion to choose the location of an inmate's imprisonment." *Fults v. Sanders*, 442 F.3d 1088, 1090 (8th Cir. 2006). In a case originating from the Western District of Missouri, in a concurring opinion, Judge Bright opined that the Second Chance Act of 2007 marked "an increasing special obligation to help federal offenders successfully reenter into society." *United States v. Wessels*, 539 F.3d 913, 915 (8th Cir. 2008) (Bright, J., concurring) (citing Pub. L. No. 110-199, 122 Stat. 657 (Apr. 9, 2008).) The First Step Act, under which the defendant is seeking release, further expanded the BOP's authority to place prisoners, providing more ways

10

to reach rehabilitation goals, but it did not change a district court's authority to order placement in a halfway house or order home confinement.

On March 26, 2020, the Attorney General directed the Director of the Bureau of Prisons to prioritize the use of statutory authority to place prisoners in home confinement. The CARES Act, passed on March 27, 2020, temporarily expanded this provision, while leaving its application to the BOP. As part of the CARES Act, Congress sought to address the spread of the coronavirus in prison by permitting the BOP to expand the use home confinement under § 3624(c)(2). Section 12003(b)(2) of the CARES Act suspends, during the emergency of the coronavirus pandemic, the limitation in § 3624(c)(2) that restricts home confinement to the shorter of 10 percent of the inmate's sentence or 6 months, once the Attorney General makes requisite finding that emergency conditions will materially affect the function of BOP.[4] The Attorney General made those findings on April 3, 2020, conferring on BOP the authority to expand its use of home confinement, and the BOP is devoting all available resources to executing that directive.

As set out above, and pursuant to 18 U.S.C. § 3642(c)(2), the BOP has exclusive authority to determine the placement of prisoners. Although, the First Step Act, CARES Act, and Second Chance Act give eligible inmates the possibility to be considered for home confinement or halfway house placement, that decision rests exclusively with the BOP. *See United States v. Kluge*, 2020 WL 209287 at *3 (D. Minn. Jan 14, 2020) ("Nothing in the statutes amended by the FSA permits the Court to place Defendant in home confinement. Under the FSA, the authority to

---

[4] Section 12003(b)(2) provides that "if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate."

place a prisoner remains with the BOP."); *United States v. James*, 2020 WL 1922568 *3 (D. Minn. April 21, 2020) (holding the district court "lacks jurisdiction to grant [defendant's] motion under the First Step Act, Second Chance Act, or CARES Act.")

Since March 26, 2020, the BOP has assessed and placed a significant number of inmates on home confinement (*see* https://www.bop.gov/coronavirus/index.jsp), focusing on, among other factors, the vulnerability of the inmates, the prisons most at risk, and the dangers posed by the inmates if released. The BOP is in the best position to determine who should be placed on home confinement, and has greatly expanded this option for suitable inmates during this time of crisis.

Here, because the defendant does not present an extraordinary and compelling reason that justifies a reduction of his sentence, the Court should not reconsider the terms of his sentence. Regardless of the Court's determination on compassionate release, the authority to determine the defendant's placement for the remainder of his sentence rests squarely with the BOP.

### VI. Record of Rehabilitation is Not an Extraordinary and Compelling Reason

Finally, the defendant asserts he has demonstrated a record of rehabilitation, and the Government does not dispute the progress he has made attempting to mend relationships as illustrated in the documents attached as exhibits to his motion (D.E. 126), and this is laudable. However, rehabilitation of a defendant is not, by itself, an extraordinary and compelling reason for a reduction of a term of imprisonment. (U.S.S.G. § 1B1.13 Commentary n.3; 28 U.S.C. § 944(t).)

## CONCLUSION

Based on the foregoing, the Government respectfully requests that the defendant's motion for compassionate release be denied.

Respectfully submitted this 29th day of April 2021.

> Teresa A. Moore
> Acting United States Attorney
>
> */s/ Matthew P. Wolesky*
>
> Matthew P. Wolesky
> Assistant United States Attorney

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was delivered on April 29, 2021, to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to all counsel of record and defendant at:

> Ramar Brown, *Pro Se*
> Reg. No. 19116-045
> FCI Schuylkill
> Federal Correctional Institution
> P.O. Box 759
> Minersville, PA  17954

> */s/ Matthew P. Wolesky*
> Matthew P. Wolesky
> Assistant United States Attorney